```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION


MARIA ZASARETTI-BECTON,            )
                                   )
              Plaintiff,           )
                                   )
         v.                        )     No. 4:12 CV 587 DDN
                                   )
THE HABITAT COMPANY OF MISSOURI,   )
LLC, et al.,                       )
                                   )
              Defendants.          )
```

### MEMORANDUM AND ORDER

This action is before the court on the motion of defendants The Habitat Company of Missouri, LLC and The Habitat Company, LLC to dismiss. (Doc. 19.)  The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Doc. 29.)  Oral argument was heard on May 23, 2012.

### I.  BACKGROUND

On February 6, 2012, plaintiff Maria Zasaretti-Becton commenced this action in the Circuit Court of St. Louis City, Missouri against defendants The Habitat Company of Missouri, LLC; The Habitat Company, LLC; and Marla Jackson.  (Doc. 1-1 at 19-29.)  On February 23, 2012, plaintiff filed an amended petition in which she also named a John Doe Business Entity as a defendant.  (Id. at 1-13.)  On March 30, 2012, defendants removed the action under 28 U.S.C. § 1441(b), on the basis of diversity of citizenship jurisdiction, 28 U.S.C. § 1332.  (Doc. 1.)

Also on March 30, 2012, defendants The Habitat Company and The Habitat Company of Missouri answered and joined defendant Marla Jackson in moving to dismiss Counts II and III.  (Docs. 3, 5.)  On April 11, 2012, plaintiff filed a second amended complaint.  (Doc. 11-13.)  Upon the filing of plaintiff's second amended complaint, the court denied defendants' motion to dismiss without prejudice as moot.  (Doc. 12.)

On April 25, 2012, defendants The Habitat Company and The Habitat Company of Missouri moved to dismiss Counts II and III of plaintiff's second amended complaint, and to dismiss defendants Marla Jackson and the

John Doe Business Entity from all counts. (Docs. 19, 20.) At the May 23, 2012 hearing, plaintiff's counsel made an oral motion to dismiss defendants Marla Jackson and John Doe Business Entity from the action, which the court sustained. (Docs. 27, 28.)

Plaintiff makes the following factual allegations in her second amended complaint.

Plaintiff was employed by The Habitat Company as a property manager from January 1, 2001, until she was terminated on March 4, 2011. (Doc. 13 at ¶ 19.) Specifically, she worked as the property manager of the Parkview Apartments in the City of St. Louis (Parkview Property). (Id. at ¶ 23.) She was born on February 4, 1954; at all relevant times, she was over 40 years old. (Id. at ¶ 25.)

The Habitat Company has a contract with the St. Louis Housing Authority (SLHA), a federally-funded government agency that provides low-income housing to residents in St. Louis City, to manage certain low-income housing properties in the St. Louis area. (Id. at ¶¶ 20-21.) These low-income housing properties are subject to the statutes and regulations of the United States Department of Housing and Urban Development (HUD). (Id. at ¶ 22.) The Parkview Property is a low-income public housing development subject to federal statutes and HUD regulations. (Id. at ¶ 24.)

From 2005-2007, plaintiff and the Parkview Property received many awards and recognitions. (Id. at ¶¶ 26-27.)

In January, 2008, Marla Jackson, then the Vice President of Property Management and an employee of The Habitat Company, began supervising plaintiff. (Id. at ¶ 28.) Jackson immediately began disciplining plaintiff for infractions for which other, younger employees were not disciplined. (Id. at ¶ 29.)

In January or February, 2009, plaintiff's direct supervisor, Clint Grigley, completed a Performance Review for plaintiff for the year 2008, in which he stated that plaintiff "met and many times exceeded expectations." (Id. at ¶¶ 30-31.) Jackson, who was Grigley's supervisor, refused to accept Grigley's Performance Review and asked Grigley to lower plaintiff's overall rating. (Id. at ¶ 32.) Grigley refused, and was terminated in March, 2009. (Id. at ¶ 33.)

In the summer of 2010, plaintiff began having escalating problems with a tenant (Tenant), and sought to evict Tenant. (Id. at ¶ 34.) Tenant was violating federal statutes and HUD regulations by living in HUD housing without complying with the Quality Housing and Work Responsibility Act of 1998,[1] by not completing the eight hours of community service each month required by 42 U.S.C. § 1437j. (Id. at ¶ 35.) As of September, 2010, Tenant had not completed any community service for at least two years, despite not being subject to any exemption of § 1437j(c)(2). (Id. at ¶ 36.) Tenant also physically assaulted other tenants and was suspected of drug use. (Id. at ¶ 37.)

However, Jackson asked plaintiff not to evict Tenant and instead to find a doctor to "say the right things" to get Tenant deemed disabled so that Tenant would not be required to perform the community service required by her lease and by § 1437j. (Id. at ¶¶ 38-39.) Plaintiff refused. (Id. at ¶ 40.) Tenant later physically threatened plaintiff, vandalized plaintiff's apartment, harassed tenants, stole, and slapped another tenant. In spite of these actions, Jackson would not allow plaintiff to evict Tenant and even told plaintiff to destroy the incident report from when Tenant slapped the other tenant. (Id. at ¶¶ 41-43.)

In September, 2010, Jackson placed plaintiff on a "Permanent Improvement Plan" (PIP). (Id. at ¶ 44.) This was the first time plaintiff had been placed on a PIP while employed by defendants. (Id. at ¶ 45.) Jackson told plaintiff that she was being put on a PIP due to her inability to complete a report, even though plaintiff was never trained to complete the report; only other, younger employees were given this training. (Id. at ¶¶ 46-47.)

In September, 2010, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), Charge No. 560-2010-02790, in which she alleged that defendants were discriminating against her based on her age. (Id. at ¶ 48.) In October, 2010, plaintiff e-mailed Marvin Bostic of the SLHA and informed him of the problems with Tenant and that The Habitat Company was not supporting her decision to evict Tenant. (Id. at ¶ 49.) Plaintiff also asked a SLHA attorney for

---

[1]Pub. Law. No. 105-276, 112 Stat. 2461 (1998).

- 3 -

advice on how to proceed with evicting Tenant so that she could do so while complying with HUD laws. (Id. at ¶ 50.)

In January, 2011, Tenant was evicted. (Id. at ¶ 51.) At the time, plaintiff was 56 years old, managed a property with 300 units, and had the second-highest occupancy rate, while other property managers managed properties with between 21 and 155 units. (Id. at ¶¶ 52-53, 56.) Despite managing more units than other managers, plaintiff was not given additional staff, and her request for additional staff was denied. (Id. at ¶¶ 54-55.)

At some point, Jackson terminated the employment of other, older employees, most of whom were over 50 years of age. (Id. at ¶ 57.)

On March 4, 2011, plaintiff attended a mediation to resolve her employment issues with defendants. (Id. at ¶ 58.) That day, plaintiff was discharged and, at some point, replaced by a younger employee. (Id. at ¶¶ 59-60.)

In Count I, plaintiff alleges that defendants The Habitat Company of Missouri and The Habitat Company violated the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010, et seq. (MHRA), by disciplining and discharging her because, at least in part, of her age. Plaintiff alleges that: (a) she was disciplined and put on a PIP when other, younger employees were not; (b) she was hindered in her ability to perform her job properly and was asked to circumvent rules and laws when other, younger employees were not; (c) she was replaced by a younger employee; and (d) she was terminated when other, younger employees were not. (Id. at ¶¶ 61-68.)

In Count II, plaintiff alleges that defendants violated Missouri's common law against wrongful discharge, in that she was discharged (a) because she refused to violate the law or engage in conduct which she reasonably believed would have violated the law, when Jackson asked her to violate 42 U.S.C. § 1437j(c) by not requiring Tenant to participate in mandatory community service and by finding a doctor who would be willing to find Tenant "disabled;" and (b) because she reported these alleged wrongdoings, which she reasonably believed to be violations of the law, to the SLHA. (Id. at ¶¶ 69-79.)

In Count III, plaintiff alleges that defendants violated Missouri's common law against wrongful discharge, in that she was terminated after (a) Jackson asked her to violate the SLHA's "one strike" policy regarding evicting tenants, and 24 C.F.R. § 966.4 by destroying the paperwork from Tenant slapping another tenant, which plaintiff refused to do; and (b) she reported what she believed to be wrongdoing and violations of law to the SLHA.  Plaintiff alleges that these were improper contributing factors in defendants' decision to discharge her.  (Id. at ¶¶ 81-94.)

In Count IV, plaintiff alleges that defendants violated the MHRA by retaliating against her by discharging her because she filed a discrimination charge against them, participated in related mediation, and participated in an investigation with the EEOC and Missouri Commission on Human Rights (MCHR).  (Id. at ¶¶ 95-97.)

## II.  MOTION TO DISMISS

Defendants argue that Counts II and III should be dismissed because plaintiff's complaint does not allege facts that, if true, would establish a violation of law or well-established and clearly-mandated public policy.  Defendants also argue that plaintiff's allegations that she reasonably believed defendants violated the law are legally insufficient and otherwise unreasonable.  (Docs. 19, 20.)

Plaintiff responds that she refused to violate the law and that she reported to others, including the SLHA, that she was being asked to violate the law.  Plaintiff argues, alternatively, that she reasonably believed that defendants' conduct was or would have been a violation of law.  (Doc. 21.)

Defendants reply that plaintiff's allegations, if true, would not establish that a law was or would have been violated, nor would they have supported a reasonable belief that a law was or would have been violated.  (Doc. 24.)

## III.  MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. Carton v. Gen. Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir. 2010); Young v. City of St. Charles, 244 F.3d

- 5 -

623, 627 (8th Cir. 2001).  To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). To meet the plausibility standard, the complaint must contain "more than labels and conclusions." Id. at 555.  Rather, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[2]

The Federal Rules of Civil Procedure demand only that a complaint present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  And in this regard, the court must be mindful of Federal Rule of Civil Procedure 84's requirement that the attached Forms 10 to 21 be considered examples of the "simplicity and brevity that [Rule 8] contemplate[s]." Fed. R. Civ. P. 84; see Hamilton v. Palm, 621 F.3d 816, 818 (8th Cir. 2010).

A complaint must be liberally construed in the light most favorable to the plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2006).  The court must accept all the facts alleged as true, even if doubtful. Twombly, 550 U.S. at 555.  Thus, a well-pleaded complaint may proceed even if it appears that recovery is very remote or unlikely. Id.; Young, 244 F.3d at 627.

## IV.  DISCUSSION

"Missouri maintains the default rule of at-will employment for employees without employment contracts for a definite term: an employer may discharge an at-will employee for any reason or for no reason without liability for wrongful discharge." Taylor v. St. Louis Cnty. Bd. of

---

[2]Although defendants filed answers contemporaneously with their motion to dismiss, contra Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."), the court nonetheless applies the standard for evaluating a Rule 12(b)(6) motion to dismiss because the standard is the same as that for the alternative, a Rule 12(c) motion for judgment on the pleadings.  E.g., Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990); Webster Indus., Inc. v. Northwood Doors, Inc., 234 F. Supp. 2d 981, 989 (N.D. Iowa 2002); see also Fed. R. Civ. P. 12(h)(2)(B) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by motion under rule 12(c).").

Election Comm'rs, 625 F.3d 1025, 1027 (8th Cir. 2010) (per curiam) (citing Sivigliano v. Harrah's N. Kan. City Corp., 188 S.W.3d 46, 48 (Mo. App. W.D. 2006)); accord Margiotta v. Christian Hosp. Ne. Nw., 315 S.W.3d 342, 345-46 (Mo. banc 2010).  But in Fleshner v. Pepose Vision Institute, P.C., 304 S.W.3d 81, 84 (Mo. banc 2010), the Missouri Supreme Court recognized a limited public policy exception to the at-will employment doctrine:

> An at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body or (2) for reporting wrongdoing or violations of law to superiors or public authorities.

304 S.W.3d at 92; cf. Missouri Approved Jury Instructions (MAI) § 38.03 n.1 (7th ed. 2012) (discussing the origins of Missouri's public policy exception).  "If an employer terminates an employee for either reason, then the employee has a cause of action in tort for wrongful discharge based on the public-policy exception."  Fleshner, 304 S.W.3d at 92.

To succeed on a claim for wrongful discharge in violation of public policy under Missouri law, a plaintiff must establish that: (1) she refused to violate the law or a well-established and clear mandate of public policy, or reported such a violation to a superior or public authority; (2) the defendant terminated her employment; (3) her refusal or report was a contributing factor in her termination; and (4) as a result of her discharge, she sustained damage. Keveney v. Mo. Military Acad., 304 S.W.3d 98, 103 (Mo. banc 2010); Custom Hardware Eng'g & Consulting, Inc. v. Dowell, No. 4:10 CV 653 ERW, at *17 (E.D. Mo. May 5, 2011); cf. MAI § 38.03.

### A. Count II

In Count II, plaintiff alleges that defendants violated Missouri's common law against wrongful discharge, in that she was discharged (a) because she refused to violate the law or engage in conduct which she reasonably believed would have violated the law, when Jackson asked her to violate 42 U.S.C. § 1437j(c) by not requiring Tenant to participate in mandatory community service and by finding a doctor who would be willing to find Tenant "disabled;" and (b) because she reported these

alleged wrongdoings, which she reasonably believed to be violations of the law, to the SLHA.  (Id. at ¶¶ 69-79.)

The statute cited by plaintiff, 42 U.S.C. § 1437j(c), regulates HUD housing and states:

(c) Community service requirement.

> (1) In general.
>
>> Except as provided in paragraph (2) and notwithstanding any other provision of law, each adult resident of a public housing project shall--
>>
>>> (A) contribute 8 hours per month of community service (not including political activities) within the community in which that adult resides; or
>>>
>>> (B) participate in an economic self-sufficiency program (as that term is defined in subsection (g) of this section) for 8 hours per month.

42 U.S.C. § 1437j(c)(1).

Defendants first argue that plaintiff has not pleaded an actual violation of § 1437j(c) because the statute permits a tenant to participate in an economic self-sufficiency program in lieu of performing eight hours of community service, and plaintiff has alleged only that Tenant failed to complete eight hours of community service.

Although plaintiff does not include the "economic self-sufficiency program" alternative among the allegations of her complaint, construing the complaint broadly, plaintiff's allegation that "Tenant had not completed any community service for at least two years as of September 2010, despite not being subject to any exemption" is sufficient to allege a violation of § 1437j(c).  See generally Eckert, 514 F.3d at 806 (stating that at the motion to dismiss stage, the court "should construe the complaint liberally in the light most favorable to the plaintiff").

Defendants also argue that because § 1437j(c)(4) does not require immediate eviction, their alleged failure to evict Tenant immediately was not a violation of the law.  This statutory sub-section states:

> (4) Ineligibility for occupancy for noncompliance.
>
> A public housing agency <u>may not renew or extend any lease, or provide any new lease</u>, for a dwelling unit in public housing

- 8 -

>for any household that includes an adult member who was subject to the requirement under paragraph (1) and failed to comply with the requirement.

42 U.S.C. § 1437j(c)(4) (emphasis added). In her complaint, plaintiff identifies only § 1437j(c) as the law allegedly violated or that would have been violated had she complied with Jackson's request.

The court concludes that plaintiff has not alleged a sufficient basis of a legal violation. Plaintiff's assertion that defendants violated § 1347(c) is not supported by the facts pleaded or, insofar as the court can discern, the relevant statutory language.[3] "The mere citation of a constitutional or statutory provision in a pleading is not by itself sufficient to state a cause of action for retaliatory discharge." Margiotta, 315 S.W.3d at 347. Rather, the complaint must "specify the legal provision violated by the employer," and "it must affirmatively appear from the face of the [complaint] that the legal provision in question involves a clear mandate of public policy." Frevert v. Ford Motor Co., 614 F.3d 466, 471 (8th Cir. 2010) (citing Misischia v. St. John's Mercy Med. Ctr., 30 S.W.3d 848, 863 (Mo. App. E.D. 2000)). It does not appear from the face of the complaint that defendants, through their alleged conduct, violated the sole legal provision cited in the complaint, § 1347(c). Nor has plaintiff alleged, specifically, a violation of a public policy reflected by the law. See generally Farrow v. St. Francis Med. Ctr., ___ S.W.3d ___, 2012 WL 451882, at *7-9 (Mo. App. E.D. 2012) (discussing public policy issue in this context). Thus, Count II is legally insufficient. See Adolphsen v. Hallmark Cards, Inc., 907 S.W.2d 333, 338 (Mo. App. W.D. 1995) (claims should be dismissed where the plaintiff fails to plead any specific criminal violations or that he was directed to violate a specific law).

Therefore, Count II is dismissed without prejudice.

---

[3]The court should not parse through the potentially relevant statutory framework seeking potential violations of law or public policy reflected in the law to support plaintiff's allegations. Plaintiff bears this burden. See Adolphsen v. Hallmark Cards, Inc., 907 S.W.2d 333, 338 (Mo. App. W.D. 1995) (stating that in a wrongful termination of at-will employment suit, "the specific facts on which liability is based must be pleaded with particularity"); see also Frevert v. Ford Motor Co., 614 F.3d 466, 471 (8th Cir. 2010) (stating that the plaintiff must "specify the legal provision violated by the employer").

**B.   Count III**

In Count III, plaintiff alleges that defendants violated Missouri's common law against wrongful discharge, in that she was terminated after (a) Jackson asked her to violate the SLHA's "one strike" policy regarding evicting tenants, and 24 C.F.R. § 966.4 by destroying the paperwork from Tenant slapping another tenant, which plaintiff refused to do; and (b) she reported what she believed to be wrongdoing and violations of law to the SLHA.  Plaintiff alleges that these were improper contributing factors in defendants' decision to discharge her.  (Id. at ¶¶ 81-94.)

Plaintiff bases her allegations in Count III on 24 C.F.R. § 966.4. However, insofar as plaintiff has pleaded, 24 C.F.R. § 966.4, which is a Department of Housing and Urban Development regulation, does not require eviction of a tenant under these circumstances; the regulation grants the Public Housing Authority (PHA) discretion as to whether to evict a tenant:

> (a)(2)(iii) At any time, the [PHA] may terminate the tenancy in accordance with [subsection (*l*)].
>
> * * *
>
> (*l*) Termination of tenancy and eviction.--
>
> * * *
>
> > (2) Grounds for termination of tenancy.  The PHA may terminate the tenancy only for:
> >
> > > (i) Serious or repeated violations of material terms of the lease, . . .
> >
> > * * *
> >
> > > (iii) Other good cause.  Other good cause includes, but is not limited to, the following:
> > >
> > > > (A) Criminal activity or alcohol abuse as provided in paragraph (*l*)(5) of this subsection;
> > >
> > > * * *
> >
> > > (5) PHA termination of tenancy for criminal activity or alcohol abuse.
> >
> > * * *

- 10 -

> (vii) PHA action, generally.
>
> * * *
>
> (B) Consideration of circumstances. In a manner consistent with such policies, procedures and practices, <u>the PHA may consider all circumstances relevant to a particular case</u> such as the seriousness of the offending action, the extent of participation by the leaseholder in the offending action, the effects that the eviction would have on family members not involved in the offending action, the members not involved in the offending activity and the extent to which the leaseholder has shown personal responsibility and has taken all reasonable steps to prevent or mitigate the offending action.

24 C.F.R. § 966.4(a)(2)(iii), (*l*) (emphasis added).

When the factual allegations of the complaint are accepted as true, Count III is nonetheless legally insufficient because plaintiff's allegations would not establish that defendants asked her to violate the law, or that she reported a violation of law, because defendants retained discretion as to whether to terminate a tenant.[4]  See <u>Margiotta</u>, 315 S.W.3d at 347 (noting that Missouri law offers no legal protection for an employee who "merely disagrees personally with an employer's legally-allowed policy"); <u>cf</u>. <u>Lay v. St. Louis Helicopter Airways, Inc.</u>, 869 S.W.2d 173, 175-77 (Mo. App. E.D. 1993) (holding that a regulation which gave pilots discretion whether to fly did not "impose[]a duty on an employer to refrain from terminating a pilot whose judgment calls are contrary to the employer's judgment"). Moreover, as with Count II,

---

[4]Defendants also argue that Count III should be dismissed because 24 C.F.R. § 966.4 does not reflect a fundamental or substantial public policy.  The contours of what constitutes "public policy" for these purposes is currently pending before the Eighth Circuit Court of Appeals. See <u>Richter v. Advance Auto Parts</u>, No. 10-01179-CV-W-JTM, 2011 WL 2601201 (W.D. Mo. June 30, 2011), <u>argued</u>, No. 11-2570 (8th Cir. Jan. 11, 2012); <u>see also</u> <u>Brief for Appellant</u>, 2011 WL 4071731, at *28-35 (arguing that the district court erred in holding that her complaint did not allege violations of law that represented clear mandates of public policy). Because Count III is legally insufficient regardless, as discussed above, the court does not resolve this issue.

plaintiff has not pleaded that defendants' conduct violated any other laws or public policy reflected by a specific law.

Therefore, Count III is dismissed without prejudice.

**C.  Reasonable Belief**

In Counts II and III, plaintiff pleaded in the alternative that if the allegedly unlawful conduct did not actually violate the law, she nonetheless reasonably believed that it did so, thereby giving rise to her unlawful termination claim.  (Doc. 13 at ¶¶ 76, 90.)  The Missouri Supreme Court, however, has rejected this legal theory.

In Margiotta v. Christian Hospital Northeast Northwest, the plaintiff, a former at-will employee, brought a wrongful termination claim against his former employer, alleging that the employer terminated him for reporting violations of federal and state patient safety regulations to his supervisors.  315 S.W.3d 342, 344-45 (Mo. banc 2010).  The Missouri Supreme Court held that the federal regulation was too vague to support the plaintiff's claim and that the Missouri regulation concerned building safety, not patient treatment, and thus was not applicable.  Id. at 348.  The court then stated:

> What Margiotta asks this Court to do is to grant him protected status for making complaints about acts or omissions <u>he merely believes to be violations of the law or public policy.  The public policy exception to the at-will doctrine is not so broad.</u>  A legal duty will not be forced upon parties who have agreed to an at-will relationship . . . .

Id. (emphasis added); see also id. at 346-47 (explaining that Missouri's public policy exception is "very narrowly drawn" and that "[t]he mere citation of a constitutional or statutory provision in a pleading is not by itself sufficient to state a cause of action for retaliatory discharge[;] the plaintiff must demonstrate that the public policy mandated by the cited provision is violated by the discharge").

Recently, the Eighth Circuit had occasion to apply this aspect of Margiotta.  In Bazzi v. Tyco Healthcare Group, LP, the plaintiff brought suit against his former employer, alleging that he was terminated either because he refused to validate adulterated drugs or because he acted as a whistleblower by directing his subordinate to draft and distribute a report relating to his concerns with validating the adulterated drugs.

- 12 -

652 F.3d 943, 944-45 (8th Cir. 2011). The Eighth Circuit agreed with the district court that the plaintiff failed to establish that the employer had committed an act or omission that violated the law and thus, the plaintiff's case "amounted to no more than complaints about acts or omissions he subjectively believe[d] to be violations of the law or public policy." Id. at 948. Relying on Margiotta, the Eighth Circuit explained that Missouri's "public policy exception to the at-will doctrine is not so broad" and that because the plaintiff had failed "to submit even a scintilla of admissible evidence" that a violation of law had occurred, the employer was entitled to summary judgment. Id.

Plaintiff relies on Dunn v. Enterprise Rent-A-Car Co., 170 S.W.3d 1, 10-11 (Mo. App. E.D. 2005), and Clark v. Beverly Enterprises-Missouri, Inc., 872 S.W.2d 522, 525-26 (Mo. App. E.D. 1994), in arguing that her reasonable belief is sufficient to state a claim of unlawful termination under Missouri's public policy exception to the at-will employment doctrine. Dunn and Clark, however, were decided by the Missouri Court of Appeals before Margiotta; as the more recent holding from the highest Missouri court, Margiotta controls. To the extent Dunn, Clark, and any other pre-Margiotta holdings[5] recognize the validity of this legal theory, the court concludes that post-Margiotta, a reasonable belief of legal wrongdoing is not itself sufficient to succeed on an unlawful termination claim brought under Missouri's public policy exception to the at-will employment doctrine.

### V.   CONCLUSION

For the reasons and to the extent discussed above,

**IT IS HEREBY ORDERED** that the motion of defendants The Habitat Company and The Habitat Company of Missouri, LLC to dismiss Counts II and III (Doc. 19) is sustained. Counts II and III of plaintiff's second amended complaint are dismissed without prejudice.

---

[5]See, e.g., Kelly v. Bass Pro Outdoor World, LLC, 245 S.W.3d 841, 847-48 (Mo. App. E.D. 2007) (relying on Dunn in holding that the plaintiff had "made a submissible case for wrongful termination based upon his reasonable belief that [his former manager] committed a crime").

                                              /S/    David D. Noce
                                        **UNITED STATES MAGISTRATE JUDGE**

Signed on June 25, 2012.